UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW RICHIE BROWN,

    Petitioner,

v.                               Case No. 8:22-cv-1756-WFJ-JSS
                                    (Crim. Case No. 8:20-cr-43-WFJ-JSS)

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER DENYING MR. BROWN'S 28 U.S.C. § 2255 PETITION

Petitioner Andrew Richie Brown brings this Petition under 28 U.S.C. § 2255 to vacate his conviction after a guilty plea and sentencing. The Government concedes timeliness and cognizability. The Court denies the Petition.

Mr. Brown was charged with selling methamphetamine in several encounters with an undercover police officer. Presentence Investigation Report ("PSR") at ¶¶ 15–18 (found at sealed Doc. 95 in the underlying criminal case).[1] All told, the investigation determined that Petitioner Brown was responsible for selling 20.5 grams of methamphetamine "ice." *Id.*

Petitioner entered a fully knowing guilty plea to Count Three, the charge

---

[1] The underlying criminal record, 8:20-cr-43-WFJ-JSS, is cited as "Doc ___." The instant civil case now is cited as "Civ. Doc. ___."

involving the methamphetamine sale.  Doc. 105 at 4–18.  He cites no fault with the plea procedure.

The Probation Office issued a PSR prior to sentencing and determined that Mr. Brown's total offense level (25) and criminal history category (VI) produced an advisory guidelines range of 110 to 137 months' imprisonment and a statutory minimum mandatory sentence of 60 months' imprisonment.  PSR ¶¶ 22–32, 116–116.[2]  Defense counsel objected to the PSR and sought a downward departure due to the drug weight and purity attributable to Brown.  *See* PSR Addendum at 28–35.  Defense counsel requested a 60-month sentence, arguing in part that the plus-or-minus statistical deviation contained in the laboratory reports equated to less than 20 grams of methamphetamine rather than the 20.5 grams listed in the PSR.  PSR ¶ 18; PSR Addendum at 43; *see also* Doc. 107 at 8, 20.  In the plea agreement Mr. Brown admitted to distributing "approximately" 20.5 grams of 96% and 100% pure methamphetamine.  Doc. 69 at 21.

This Court overruled Petitioner's objection and adopted the recommendations in the PSR, but varied downward from the guidelines, sentencing Mr. Brown to 98 months' imprisonment.  Doc. 107 at 28.  Mr. Brown did not appeal.

---

[2] Based on the "Pure Substance" grams in the DEA reports, the Probation Office found Mr. Brown responsible for 20.5 grams (2.77 grams plus 17.54 grams) of methamphetamine "ice."  PSR ¶ 18. Because the Probation Office attributed 20.5 grams of methamphetamine "ice" to Brown, his base offense level was 26.  *Id*. ¶ 24.  Because Brown possessed and sold a firearm during the commission of one of the crimes, the offense level increased by two levels.  *Id*. ¶ 25.  He scored a 3-point reduction for acceptance of responsibility.  *Id*. ¶¶ 30–31.

2

For this Petition Mr. Brown brings two grounds of ineffective assistance of counsel. Civ. Doc. 1. As to Ground One, he claims that defense counsel failed to litigate the "plus-or-minus" statistical deviation contained in the DEA's laboratory reports. *Id*. at 4. More specifically, Brown claims that he should only be responsible for 19.04 grams of methamphetamine (instead of 20.5 grams) because of the disparity in weight margin of error. Civ. Doc. 1; *see also* PSR ¶ 18; PSR Addendum at 34. This would have lowered his offense guidelines by two points. As to Ground Two, Brown argues that defense counsel failed to argue for a downward departure or variance and that counsel failed to inform this Court that the pure versus mixture disparity yields a sentence greater than necessary. Civ. Doc. 1 at 5.[3]

To succeed on an ineffective assistance of counsel claim, a petitioner must meet a stringent, two-prong test. First, the petitioner must show that counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the petitioner must prove resulting prejudice. *Id*. If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

*Strickland* sets a "high bar" for ineffective assistance claims and surmounting

---

[3] In his Reply, Mr. Brown brings a related issue for the first time, asserting that the laboratory also included two plastic bags in the weight. Civ. Doc. 6 at 2, 5, 10–11. This claim is made without any

3

it "is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted).  When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).  The standard that the petitioner must meet is both "rigorous" and "highly demanding," and requires a showing of "gross incompetence" on counsel's part. *Kimmelman v. Morrison,* 477 U.S. 365, 381–82 (1986).  A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

To successfully claim ineffective assistance of counsel, Mr. Brown must "identify particular acts or omission of the lawyer that are shown to be outside of the broad range of reasonably competent performance under prevailing professional standards." *Maxwell v. Wainwright*, 490 So. 2d 927, 932 (Fla. 1986) (citing S*trickland*). Additionally, a "clear, substantial deficiency" must be demonstrated to have affected the fairness and reliability of the proceeding that

---

citation to the factual record.  New claims may not be asserted for the first time in a Reply.

confidence in the outcome is undermined." *Id*.

The Petition addresses whether a sentencing disparity between pure "ice" methamphetamine and a mixture of methamphetamine, including the margin of error (±) component listed in the DEA's lab reports, resulted in him receiving a higher offense level and, therefore, a higher sentence. *See generally* Civ. Doc. 1. At Ground One, his central argument is that he is responsible for 19.04 grams of methamphetamine, not 20.5 grams. Civ. Doc. 1 at 4; *see also* PSR ¶ 18. He states that the DEA lab reported that the methamphetamine he sold on July 2, 2018, had a purity of 100% ± 6%, amounting to 2.77 grams ± 0.17 grams, and that the methamphetamine he sold on July 3, 2018, had a purity of 96% ± 6%, amounting to 17.54 grams ± 1.10 grams. Civ. Doc. 1 at 4.

Because of the (±) margin of error in the DEA reports, Mr. Brown argues that this Court should have erred on the side of caution and implemented a *minus-approach* rather than a *plus-approach* and that defense counsel was ineffective for failing to litigate this issue. *Id*. For example, as to the July 2, 2018, drug sale, instead of adding 0.17 grams to 2.77 grams, Brown claims defense counsel should have requested that this Court subtract 0.17 grams from 2.77, yielding 2.60 grams, not 2.94 grams (0.17 grams plus 2.77 grams). *Id*. And as to the sale on July 3, instead of adding 1.10 grams to 17.54 grams, Brown claims defense counsel should have convinced this Court to subtract 1.10 grams from 17.54 grams, yielding 16.44 grams, not 18.64 grams (1.10 grams plus 17.54 grams). *Id*.

5

Mr. Brown claims that if the total weight had been calculated using a *minus- approach* (16.44 grams plus 2.60 grams, totaling 19.04 grams), and thus less than 20 grams, his offense level would have been more in line with the base offense level for a conviction involving less than 20 grams. *Id*. This would have reduced his base offense level by two points under Guidelines § 201.1(8).

As Ground Two, Mr. Brown claims that defense counsel failed to argue properly for a downward departure. *Id*. at 5. He claims that during sentencing defense counsel should have properly argued that the methamphetamine guidelines, which reflect at 10:1 sentencing disparity between pure "ice" methamphetamine and non-pure, or mixture methamphetamine, is not supported by empirical evidence and that this Court had the discretion to vary downward based on a policy disagreement with the applicable guidelines. *Id*. According to Brown, defense counsel was ineffective for not informing this Court that the pure versus mixture disparity yields a sentence greater than necessary to achieve a proper sentence. *Id*.

Ground One is a false premise. The defense attorney *did* litigate the issue of the specific drug weight, contrary to the Petition's claim at Civ. Doc. 1 at 4. Petitioner's attorney objected to the PSR, claiming that his total offense level should be adjusted to compensate for a lesser amount of methamphetamine (2.60 grams and 16.44 grams, totaling 19.04 grams, not 20.5 grams). *See* PSR Addendum at 28; *see also* Doc. 91 at 2 (cogent defense memorandum arguing for lesser weight). Moreover, at sentencing Mr. Brown's attorney argued the 19.04

6

grams theory, again, claiming that:

> based on the lab reports and the statistical deviance plus or minus, … there's actually less than 20 grams of actual methamphetamine. So we believe that even the worst case scenario for Mr. Brown has him at a base offense level of 24 because it's less than 25 grams of actual methamphetamine.
>
> …
>
> [s]o we're asking this Court to determine instead that the correct guideline would correspond to a base level of either 18 or 16, depending upon whether or not this Court wants to take into account the plus and minus deviation in the lab reports.

Doc. 107 at 8–9.

This Court rejected defense counsel's argument, explaining in relevant part that:

> I affirm the findings … in the … PSR as to the weight and the quantity and the quality. I will consider that … in considering a variance for the ground that it does seem to be a bit overstated now.

*Id.* at 14.

The foregoing aptly shows that defense counsel zealously objected to Mr. Brown's base offense level and thus the 20.5 grams. And defense counsel won the day on this point: The Court varied downward appreciably, to the equivalent of a two-point downward variance, which provided precisely the relief Brown sought. Doc. 98, 99. Had this Court accepted counsel's argument that Brown is responsible for less than 20 grams of methamphetamine "ice," thereby creating a total offense level of 23 instead of 25, Brown's 98-month sentence would fall in the lower half of

the guidelines range for that offense level (23).  The Government's chart below iterates this fact.

| Guideline Provisions (Adopted By This Court) | | Guideline Provisions (As Brown Requests Here) | |
|---|---|---|---|
| **Total Offense Level** | 25 | **Total Offense Level** | 23 |
| **Criminal History Category** | VI | **Criminal History Category** | VI |
| **Guideline Range** | 110–137 months | **Guideline Range** | 92–115 months |

PSR ¶¶ 22–32, 115–116; *see also* PSR Addendum at 29–30.

At the end of the day, this Court's rejection of defense counsel's request does not render counsel's performance ineffective, and the defense lawyer carried the issue with a variance downward instead.  Counsel had no duty to expound further on a losing argument.  *See Waters v. Thomas*, 46 F.3d 1506, 1518–19 (11th Cir. 1995) (*en banc*) ("We cannot, and will not, second guess such [strategic] decisions" that "trial counsel are called upon to make.").  Petitioner's counsel was neither ineffective on this point, nor is there any prejudice—the opposite is true.

As to Ground Two, defense counsel ably argued that there should be a downward variance or departure given the ubiquitous nature these days of "ice." *See* Doc. 91 at 6-9.  The argument goes thusly:  Since almost every methamphetamine case now involves nearly pure meth, and meth is no longer poorly made nor diluted or "stepped on" like other illicit narcotics, the "ice" enhancement in the guidelines no longer identifies "original source" or "higher up"

8

vendors. Further, the enhanced danger of pure "ice" is now catholic and not unusual or an outlier.

This argument is not without merit, and has been frequently made to the undersigned, including by Petitioner's counsel in other cases. It always seemed to the undersigned to be worthy of attention by the U.S. Sentencing Commission.

Petitioner's counsel did not omit this argument for a variance/departure here, and made it in her normal trenchant, thorough manner both in the written submission, Doc. 91, and *ore tenus*:

> **DEFENSE COUNSEL**: This Court is well aware that the methamphetamine that is found now and is associated with these criminal cases is nearly always pure because methamphetamine is now basically only found in its pure form. … [T]here's really not a lot of mixture of meth found nowadays, so we are asking this Court to consider the amount as a mixture.

Doc. 107 at 8.

This Court responded and engaged in the following exchange with defense counsel and the United States:

> **THE COURT**: So basically you want this to be considered … regular meth and not ice? … And the prime reason why is because … everything is ice now?
>
> …
>
> **DEFENSE COUNSEL**: Yes, Your Honor. There is no dispute that the guidelines as they're currently written would call this ice. The problem is that … in the defense's opinion … the guidelines have not caught up to the reality.
>
> …

9

> **UNITED STATES**: [I]t's not that I disagree with the factual analysis and the factual situation on which she's basing that decision, but it would create a sentencing disparity on the other way since it appears people are getting sentenced for ice when it is ice. … That said . . . this is unlike … a *Kimbrough* [*v. United States,* 552 U.S. 85 (2007)] situation[.]

*Id*. at 9–10, 12.

As the United States Supreme Court did in *Kimbrough*, this Court too refused to deviate from the guidelines: "I'm going to stick with the guidelines." Doc. 107 at 14.

Defense counsel argued *Kimbrough* orally and in written form (Doc. 91 at 6–9), and properly sought a downward variance on this ground. Any suggestion that she should have couched her argument differently is speculative. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (speculative claims of ineffective assistance of counsel insufficient). And defense counsel was successful. The Court stated at sentencing, "I am going to depart downward some—not depart, vary downward some—because frankly [defense counsel] Ms. Casciola told me to. She's probably right [about meth purity ubiquity]." Doc. 107 at 26.

To establish entitlement to an evidentiary hearing, a preliminary allegation of facts must be made. Here the facts alleged are all contradicted by the record. No hearing is necessary. *See generally Hernandez v. United States*, 778 F.3d 1230, 1232–33 (11th Cir. 2015); *Birt v. Montgomery*, 725 F.2d 587, 591 (11th

10

Cir. 1984) (*en banc*).  Summary dismissal is warranted when "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]"  *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (quoting 28 U.S.C. foll. § 2255). Accordingly, no hearing is required when the record establishes that a § 2255 claim lacks merit.  *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). The Petition is dismissed as meritless.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Mr. Brown's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("the Petition") (Civ. Doc. 1) is **denied**.

(2) Because the Petition is refuted by the plain facts in this record, no certificate of appealability will issue, and leave to proceed on appeal *in forma pauperis* is denied.  The Clerk is directed to **close** the case.

**DONE AND ORDERED** at Tampa, Florida, on March 31, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE